## HARRIS v. CHAIN STORE REALTY BOND & MORTGAGE CORPORATION.

1. EVIDENCE—JUDICIAL NOTICE—GENERAL ECONOMIC DEPRESSION.
   The Supreme Court takes judicial notice of various national and State relief projects, moratoria and other remedial and emergency acts during the general economic depression of the 1930's.

2. FRAUD—BURDEN OF PROOF—EXECUTION· OF INSTRUMENTS.
   The burden of showing alleged fraud in connection with the execution of an instrument affecting an interest in land is upon the· party asserting fraud was perpetrated.

3. SAME—BURDEN OF PROOF—EVIDENCE—MODIFICATION OF LONG-TERM LEASE.
   Evidence of misrepresentations by defendants, incident to modification of long-term lease of building used .for stores, offices, and flats *held,* insufficient to support plaintiffs' burden of proof. ·

4. SAME—RELIANCE UPON ALLEGED MISREPRESENTATIONS—EVIDENCE.
   Reliance on defendants' alleged misrepresentation that they were losing money in operation of building leased from plaintiffs, incident to their attempt at securing reduction of rental payments required, *held,* not proved, where one of the plaintiffs' and her attorney must have been in' full possession of the facts or had them readily available.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence, § 29 *et seq.*
[2] 24 Am' Jur, Fraud and Deceit, § 255.
[3–5] 24 Am Jur, Fraud and Deceit, § 278 *et seq.*
[4] 23 Am Jur, Fraud and Deceit, §§ 143, 155, 166.
[6] 34 Am Jur, Limitation of Actions, §§ 163, 165.
[7–9] 12 Am Jur, Contracts, § 407 *et seq.;* 32 Am Jur, Landlord and Tenant, § 147 *et seq.*
[9] 12 Am Jur, Contracts, §§ 113, 122.

5. SAME—NATURE OF PROOFS.
   Proofs to sustain a charge of fraud in connection with modification of long-term lease must be clear and convincing.

6. SAME—DISCOVERY—LIMITATION OF ACTIONS.
   Suit to set aside modification of long-term lease, whereby rents were substantially reduced, and which modification had been entered into during period of economic depression, came too late where not brought until 1947 although the alleged fraud upon which relief was based was supposed to have been perpetrated in 1931 and 1932, the evidence not sustaining plaintiffs' contention that the fraud was not discovered until 1946 (CL 1948, § 609.13 *et seq.*).

7. CONTRACTS—CONSIDERATION—CONSTRUCTION—STATUTES.
   Instrument affecting an interest in property, which was executed in 1932 and sought to be set aside in 1947 is construed in the light of the law as it existed in 1932, before enactment of statute providing that such an instrument should not be invalid because of the absence of consideration (CL 1948, § 566.1).

8. SAME—ADEQUACY OF CONSIDERATION.
   Instrument, executed in 1932, modifying a 99-year lease, executed in 1929, and calling for a total rent of $1,290,000, so as to reduce rents collectible thereunder during balance of term by about $600,000, *held,* not without adequate consideration where lessor was given the additional security of being able to collect the rents from the subtenants in the event of a default, upon a short notice, and copies of the subleases were to be turned over to the lessor.

9. SAME—ADEQUACY OF CONSIDERATION.
   Mutual promises are presumed adequate where 2 competent parties reach an agreement through a process of give and take.

Appeal from Wayne; Culehan (Miles N.), J. Submitted October 12, 1950. (Docket No. 67, Calendar No. 44,919.) Decided December 5, 1950.

Bill by Mary Harris and others against Chain Store Realty Bond & Mortgage Corporation, a Michigan corporation, and others to set aside an addenda to a contract and for accounting. Decree for defendants. Plaintiffs appeal. Affirmed.

*Greenberg & Greenberg* and *John H. Flancher* (*Fred G. Dewey,* of counsel), for plaintiffs.

*John P. O'Hara,* for defendants.

BUTZEL, J.  Mary Harris, plaintiff, filed a bill to set aside a duly executed instrument, entitled an "addenda," modifying the terms of a 99-year lease, given by her as lessor, on a 2-story building at the southeast corner of Jos. Campau and Eveline avenues in the city of Hamtramck,* Michigan.  She also asked for an accounting.  In 1938, plaintiff deeded the property to her children Louis J. Harris and Henrietta Hamburger, coplaintiffs herein, but reserved to herself a life interest in one-third of the income.  The lease ran to Chain Store Realty Bond & Mortgage Corporation, referred to herein as Chain Store, which later assigned the lease to Anid Corporation of Michigan, which subsequently assigned it to Real Estate Stores, Inc.  All 3 are Michigan corporations, and defendants herein.

The lease began on July 1, 1929, and provided for rental payments as follows:  $9,700 per annum for the first 20 years; $11,700 per annum for the following 20 years; $13,700 per annum for the next ensuing 20 years; and $14,700 per annum for the remainder of the term, one twelfth of the annual rents being payable on the first day of each month during the term of the lease.  Chain Store also agreed to pay the insurance premiums, taxes, repairs, et cetera, and deposited the sum of $10,000 with the lessor, as provided by the lease, to insure the performance of its covenants.  The building contained 1 large corner store and 2 smaller ones with offices and flats above the stores.  The lease was made subject to 3 existing leases. one expiring August

---

* Hamtramck adjoins the city of Detroit.

31, 1933, for the corner store to Jennie E. Goodwill, and 2 leases for the adjoining 2 stores. The record indicates that the existing leases included the second floor flats and office space although there may be some uncertainty in this regard.

The lease was dated June 26, 1929, when the country was going through a boom period, business appeared most prosperous and values were exceedingly high. This was just prior to the time when the entire country was plunged into the worst depression it had ever experienced, and which was particularly disastrous to the city of Hamtramck. Following the stock market crash of 1929, values of real estate and securities fell; unemployment became general; many stores became vacant; equities in many properties were wiped out; and banks failed. Conditions became progressively worse in 1931 and 1932 and remained very bad for a considerable period. We take judicial notice of the various national and State relief projects, moratoria and other remedial and emergency acts. A mere glance at the cases that came before this Court in the past 20 years reflects the general ruin and distress that befell property and persons because of the depression. These untoward conditions began 5 months after the lease was executed.

On May 1, 1931, plaintiff reduced the rent for 2 years from $9,700 to $7,200 per annum. She makes no claim on that account. On May 20, 1932, she entered into the "addenda" to the lease. It was duly executed by all of the parties and properly witnessed and acknowledged. It is referred to in the record as exhibit 3, and is the agreement upon which this suit is based. It modified the rentals provided for in the original lease. The rent for the period from May 1, 1932, to April 30, 1934, was reduced to $5,000 per annum; for the next 10 years to $6,000 per annum, and for the remainder of the term to $7,000

per annum. At the time that exhibit 3 was entered into, the lessee also agreed in writing that in the event of its default, the lessor, upon short notice, should have the right to collect the rents directly from the subtenants and copies of the subleases should be turned over to the lessor. There were other minor modifications subsequently made for limited terms, but they are of no importance in our discussion, except it was shown that Mrs. Harris was represented by capable attorneys in all of her dealings with the tenant.

The Chain Store was organized by a Mr. Hauser and Michael and Mark Birnkrant. Mrs. Harris principally dealt with Michael Birnkrant, vice-president of Chain Store. It is claimed by the plaintiffs that Mrs. Harris was induced to enter into exhibit 3 by false representations made by Michael Birnkrant. Mrs. Harris testified that at the time she regarded him as a very close friend in whom she had implicit confidence and that she acted alone in her dealings with him.

It was claimed by the plaintiffs that they knew nothing of the alleged fraud until 1946. They claim that it was through a chance conversation with an acquaintance in Florida that Mrs. Harris discovered that the lease to her building was very profitable to the lessee, and she instructed her lawyer to investigate. This investigation led to a request for an increase in the rental, and upon the lessee's refusal this suit was instigated. The plaintiffs further contend that exhibit 3 was made without adequate consideration.

The plaintiffs claim that the execution of exhibit 3 was induced by the fraudulent representations of the officers of defendants. The plaintiffs make 4 specific allegations of fraud, 3 of them consisting of oral statements made to Mrs. Harris implying that the building was losing money. The fourth charge

is based on a letter written by Michael Birnkrant to Mary Harris, which we shall refer to later. The burden of showing the fraud was upon Mrs. Harris and the coplaintiffs. The latter knew practically nothing about the truth of most of the allegations in the bill. The plaintiffs attempted to show the oral misrepresentations through the testimony of Mrs. Harris, who was 76 years old at the time of the hearing, and was testifying to events which had occurred from 17 to 20 years prior thereto. Her testimony was contradictory, evasive, and in many respects incredible. Appellants in their reply brief characterized her testimony by contending that the "loquacity and argumentativeness of an old woman, no matter how many times she contradicted herself on immaterial matters, cannot be used to punish her, nor prevent her recovering an unconscionable advantage thus far reaped by defendant." Her testimony is so full of misstatements that very little credence can be placed upon it. The trial court could not find in Mrs. Harris' testimony sufficient evidence of misrepresentations by the defendants to support the burden of proof, and an examination of the record shows that the trial court was correct.

On December 2, 1931, Michael Birnkrant had sent a letter to Mrs. Harris in which he said:

"Although I am quite certain that you will again extend the reduction of the rental of the lease at the expiration of the two years as you assured me, yet, at present we are unable to make any satisfactory leases unless the reduction in the rental is extended on the lease for the balance of the term. As it is now, we are losing money daily in the operation of this building and I know that you will be reasonable and co-operate with us in extending the reduction so as to enable us to make a proper sublease so that we can put this building on a paying basis."

It is upon this written representation that the company was losing money daily that the plaintiffs largely rely to prove fraud.

Mrs. Harris in her testimony tried to conceal the fact that she was represented by Frank A. Martin, a prominent and able member of the Detroit bar, at the time the lease and exhibit 3 were executed. Mr. Martin died in 1934. However, Mr. Martin's former secretary, a disinterested witness, testified that both documents were signed in Mr. Martin's office. They were witnessed either by Mr. Martin or his office associates. It seems almost incredible that a lawyer of Mr. Martin's ability and experience would not have gone thoroughly into existing conditions before approving the documents.

Mrs. Harris, notwithstanding her age, gave proof of being a very shrewd person as a witness. The original lease provided that it was subject to existing leases which extended into 1932 and Mrs Harris thus had information as to what the tenants were paying.

The unexpired lease for the corner store to Jennie Goodwill was purchased for $14,000 in August, 1929, so that a new lease could be made to the Walgreen Drug Company, referred to as Walgreen, which advanced the money. Chain Store agreed to repay to Walgreen the $14,000 and interest by allowing it credit for that amount on the rental to become due and payable towards the end of the term of the lease. Walgreen insisted that Mrs. Harris also sign the lease so as to be protected as sublessee in the event of any default by Chain Store in its lease with Mrs. Harris. Mrs. Harris thus knew exactly what Walgreen had agreed to pay when exhibit 3 was entered into.

As to whether Chain Store was losing money on the Harris building in 1931 and 1932 is a matter to which there is conflicting evidence by the respective

certified public accountants who appeared as witnesses. The Chain Store properties included 9 separate holdings, and there was some question as to whether the costs of operating the corporation could be charged against these holdings as an indirect expense, and if so, in what proportion. Furthermore, the testimony of accountants called by each side was conflicting. Even if there was any uncertainty as to whether Chain Store was losing money on the Harris lease, the profit found by the plaintiff's accountant was so small that there would have been a very substantial deficit, if the rents had not been reduced. The plaintiffs also rely upon the annual reports filed by the corporation. On December 31, 1930, the deficit of the corporation was $15,000, and on December 31, 1931, it was $6,000. This indicates that Chain Store made a profit in 1931, but it had 9 separate holdings and there was no showing that it was the Harris building that made the profit. On December 31, 1931, the current assets of Chain Store were about $7,000 and the current liabilities were about $59,000, a ratio of 1 for assets to more than 8 for liabilities. During 1932, the condition of the corporation grew even worse. A ratio of this sort indicates insolvency, and it would therefore appear from all the facts that the statement made by Birnkrant was true or, at least, that the plaintiff has not sustained the charge that Chain Store had attempted to defraud her.

Moreover, it was not proved that Mrs. Harris relied upon this representation, as she and her attorney must have been in full possession of the facts, or had them readily available. In the discussion prior to the signing of exhibit 3, Michael Birnkrant offered, on behalf of Chain Store, to surrender the lease, forego the benefit of expensive improvements that had been made, forfeit the $10,000 deposit, and in all lose a total investment of some $34,000 in order

to get out of the lease. Upon the advice of her attorney, Mrs. Harris refused to accept the surrender. She knew from the leases what the property was supposed to bring in and what the prospects of collecting the rent were. It is beyond belief that a single sentence in a letter sent 6 months prior to the settlement by a party who had been dealing at arm's length with the plaintiff for 2 years would be relied upon for a sizable settlement. The proofs to sustain a charge of this sort must be clear and convincing. Plaintiffs cannot recover on the strength of the facts disclosed by the record.

What is most conclusive and leaves no doubt that the plaintiffs have no legal standing is that the charge of fraud comes entirely too late, and the action is barred by the statute of limitations[*] by analogy. Plaintiffs claim that they did not discover the fraud until 1946, although it is supposed to have been perpetrated in 1931 and 1932. The evidence does not bear out this contention. Not only did Mrs. Harris have complete knowledge of the facts, but on October 14, 1932, Barbour and Martin (Mr. Martin's law firm) wrote to Chain Store, stating that Chain Store had obtained the 2 reductions in rent upon their representation that it was necessary to reduce the rentals to Walgreen Drug Company, that these representations were untrue, and that Mrs. Harris looked to the Chain Store for all moneys past due under the lease which would have accrued to her had it not been for the modification thereof based on false representations. This suit was not brought until 14 years later. The statute of limitations is a bar to recovery.

It is also claimed by the plaintiffs that exhibit 3 was not supported by consideration. The transac-

---

[*] See CL 1948, § 609.13 et seq. (Stat Ann 1949 Cum Supp § 27.605 et seq.).—Reporter.

tion arose prior to the enactment of the statute providing:

"An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration." CL 1948, § 566.1 (Stat Ann 1949 Cum Supp § 26.978 [1]).

This statute became effective on January 10, 1942, and had no retroactive effect. Exhibit 3 was executed in 1932 and we consider the question in the light of the law at that time.

The defendants claim that there was sufficient consideration. The lessor was given the additional security of being able to collect the rents from the subtenants in the event of a default. *Lamb* v. *Rathburn,* 118 Mich 666. The plaintiff accepted a reduction in rent which, during the 96 years that the lease had to run, would amount to about $600,000. To balance this against an additional security feature, argues the plaintiff, discloses a disparity in the consideration so great as to shock the conscience of the court. It has often been said that the courts will not inquire into the adequacy of the consideration. *Levitz* v. *Capitol Savings & Loan Co.,* 267 Mich 92. When 2 competent parties, through a process of give and take, reach an agreement it can be presumed that the mutual promises were considered adequate. *Kennedy* v. *Shaw,* 43 Mich 359; *Van Norsdall* v. *Smith,* 141 Mich 355; *Olson* v. *Rasmussen,* 304 Mich 639; 12 Am Jur, p 614.

In the light of the depression in 1932 the reduction of the rentals in exchange for the additional security must have seemed desirable to plaintiff. We cannot say that under the circumstances the disparity at the time was so great that an inference

of fraud was created. Nor was there any testimony that the plaintiff did not understand the nature of the consideration.

We find that the claims made by the appellants have no substance. The decree of the trial court is affirmed, with costs awarded to the appellees.

Boyles, C. J., and Reid, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.