COOK v GRAND RIVER HYDROELECTRIC POWER COMPANY,
INC

Docket No. 67391. Submitted October 4, 1983, at Grand Rapids.—
Decided February 6, 1984.

Plaintiffs, Thomas Cook, Evert G. Davis, and Sharon L. Davis,
and others, are property owners who purchased properties
abutting the Thornapple River in Kent County upstream from
the La Barge Dam between 1971 and 1980. In 1980, defendant,
Grand River Hydroelectric Power Company, Inc., bought the
dam and all rights appurtenant thereto from Consumers Power
Company. Consumers had ceased using the dam to generate
electricity in 1965 and in 1970 had ceased using the dam gates,
leaving them open. In preparation for the re-establishment of
the dam as a hydroelectric power-producing facility, in July,
1982, defendant closed the dam gates, raising the level of the
water to approximately 2-3 inches above the dam's spillway.
The spillway is 18 feet above the low-water mark or approxi-
mately 698 feet above sea level. The closing of the dam gates
caused flooding on plaintiffs' properties and, consequently, they
commenced an action in the Kent Circuit Court seeking injunc-
tive and monetary relief. A temporary restraining order was
issued, which continued in effect until the bench trial on the
merits. Following the bench trial, the trial court, R. Stuart
Hoffius, J., dismissed the plaintiffs' claims, finding that the
defendant had the right to impound water to a height of 699
feet above sea level and, further, that defendant had flowage
easements over plaintiffs' properties, permitting it to flood
portions of their properties by operating the dam. The court

REFERENCES FOR POINTS IN HEADNOTES

[1] 77 Am Jur 2d, Vendor and Purchasers § 131.

[2] 25 Am Jur 2d, Easements and Licenses § 110.
77 Am Jur 2d, Vendor and Purchaser §§ 177, 178.

[3] 25 Am Jur 2d, Easements and Licenses §§ 49-59.

[4] 25 Am Jur 2d, Easements and Licenses §§ 56, 105.
Loss of easement by nonuser or adverse possession. 25 ALR2d 1265.

[5] 28 Am Jur 2d, Estoppel and Waiver §§ 1, 53.

[6] 61A Am Jur 2d, Pollution Control § 534.

[7] 61A Am Jur 2d, Pollution Control §§ 577, 581, 585.

also rejected plaintiffs' claimed violations of the Michigan Environmental Protection Act. All of the plaintiffs, except one, appeal from the order and judgment to that effect. *Held:*

1. The record establishes that defendant has acquired valid flowage easements over the plaintiffs' properties. Even if the marketable record title act extinguished the express flowage easements acquired by defendant's predecessor in interest, defendant would still have a right to flow waters over plaintiffs' properties because defendant would have acquired prescriptive flowage easements over the properties.

2. Defendant acquired all prescriptive rights appurtenant to the dam from Consumers. The operation of the dam by Consumers from 1927 until the time it opened the dam's gates in 1970, and the resultant flooding of what are now plaintiffs' properties, constituted an open, notorious, and continuous use of the properties of the plaintiffs for a period in excess of the requisite 15 years for a prescriptive easement. Even if the express easements were extinguished by the marketable record title act, the use of the properties was also adverse. In addition, any prescriptive flowage easements acquired by defendant were not abandoned since there is no evidence of continuous nonuse of the easements for 15 years.

3. The trial court did not err in concluding that the defendant is entitled to operate its dam to its full impoundment level. Circuit court decrees of 1915 and 1922 confirmed defendant's predecessor's right to maintain an 18-foot-high dam and to impound water to a point above the spillway.

4. The trial court did not err in refusing to find that the defendant was estopped from operating the dam. There was no intentional or negligent action by Consumers inducing plaintiffs into believing that no one had the right to flood their properties and there was no evidence that Consumers made any representations to anyone to the effect that the dam would never be operated.

5. The trial court properly found that, based on the testimony, the dam's operation was not likely to pollute, impair, or destroy the environment. The court did not err in dismissing plaintiffs' claim based on the Michigan Environmental Protection Act.

Affirmed.

1. PROPERTY — INTERESTS IN LAND — MARKETABLE RECORD TITLE ACT.

The marketable record title act provides that a person holding marketable title to an interest in land takes it free and clear of any interests whose existence depends in whole or in part on

any act, transaction, event, or omission that occurred 40 years prior to the time the person obtains title (MCL 565.103; MSA 26.1273).

2. PROPERTY — INTERESTS IN LAND — EXTINGUISHMENT OF INTERESTS — MARKETABLE RECORD TITLE ACT — EASEMENTS — PRESCRIPTIVE EASEMENTS.

The marketable record title act does not extinguish interests created by hostile possession; prescriptive easements are such interests (MCL 565.101; MSA 26.1271).

3. EASEMENTS — PRESCRIPTIVE EASEMENTS — ADVERSE USE.

A prescriptive easement is founded on the supposition of a grant and arises from an open, notorious, continuous, and adverse use across the land of another for a period of 15 years; a use of land is adverse when made under a claim of right where no right exists.

4. EASEMENTS — PRESCRIPTIVE EASEMENTS — ABANDONMENT OF EASEMENTS.

A party must show the continuous nonuse of a prescriptive easement for 15 years in order to prove the abandonment of such easement.

5. ESTOPPEL — WORDS AND PHRASES.

Estoppel arises where: (1) a party, by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of facts.

6. ENVIRONMENT — INJUNCTIONS — ENVIRONMENTAL PROTECTION ACT.

A court is not empowered to enjoin as an environmental risk conduct which does not rise to the level of an environmental risk proscribed by the Michigan Environmental Protection Act; the real question is whether the action at issue can be found to rise to the level of impairment or destruction of natural resources so as to constitute an environmental risk and justify judicial intervention (MCL 691.1201 et seq.; MSA 14.528[201] et seq.).

7. ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — PRIMA FACIE CASE — BURDEN OF PROOF.

A trial court's finding in an action under the Michigan Environmental Protection Act that the plaintiffs had failed to make out a prima facie case that the defendant's conduct did, or is likely

to, pollute, impair, or destroy the environment relieves the trial court of the need to make further findings on whether the defendant has rebutted the plaintiff's prima facie case (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.).*

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *John E. Anding* and *Mark R. Smith),* for plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *Stephen Wasinger),* for defendant on appeal.

Before: R. B. Burns, P.J., and D. E. Holbrook, Jr., and R. L. Tahvonen,* JJ.

R. B. Burns, P.J. This controversy centers on the operation of the La Barge Dam located in Kent County on the Thornapple River. Between 1971 and 1980, plaintiffs purchased properties abutting the river upstream from the dam. In 1980, defendant bought the dam and all rights appurtenant thereto from Consumers Power Company. Consumers had ceased using the dam to generate electricity in 1965 and in 1970 had ceased using the dam gates, leaving them open. After purchasing the dam, defendant renovated the power-generating equipment and prepared to re-establish it as a hydroelectric power-producing facility. In July, 1982, defendant closed the dam gates, raising the level of the water to approximately 2-3 inches above the dam's spillway. The dam's spillway is 18 feet above the low-water mark or approximately 698 feet above sea level.

The closing of the dam gates caused flooding on plaintiffs' properties and, consequently, they commenced the present action seeking injunctive and monetary relief. A temporary restraining order

---

* Circuit judge, sitting on the Court of Appeals by assignment.

was issued, which continued in effect until the bench trial on the merits. In a bench opinion, the judge dismissed the plaintiffs' claims, finding that the defendant had the right to impound water to a height of 699 feet above sea level and, further, that defendant had flowage easements over plaintiffs' properties, permitting it to flood portions of their properties by operating the dam. The trial judge also rejected plaintiffs' claim based on the Michigan Environmental Protection Act, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.* Plaintiffs now appeal from the trial court judgment and order to that effect.

The origins of the dam are discussed in *Allen v Thornapple Electric Co,* 144 Mich 370, 371; 108 NW 79 (1906). The Thornapple Electric Company had purchased the original dam sometime prior to the lawsuit filed in that case and had also acquired the right to flow water over certain properties upstream from the dam. The flowage easements were recorded between 1903 and 1905. It was stipulated at trial in the present case that the express flowage easements acquired by the Thornapple Electric Company covered the plaintiffs' properties with the exception of the property owned by one plaintiff who has not appealed. It was also stipulated that 18 plaintiffs purchased their property with either deeds or title insurance policies which expressly stated that their title was subject to Consumers' flowage easements. The remaining plaintiffs bought their property pursuant to deeds which stated that their property was subject to easements of record.

As to those plaintiffs whose deeds do not specifically refer to the flowage easement, it is argued that the marketable record title act, MCL 565.101 *et seq.;* MSA 26.1271 *et seq.,* operates to extinguish

the express easements. Section 3 of the act provides in pertinent part that a person holding marketable title takes it free and clear of any interests whose existence depends in whole or in part on any "act, transaction, event, or omission that occurred" 40 years prior to the time the person obtains title. Since the validity of the express flowage easements depends on conveyances and recordings which took place more than 40 years prior to their acquisition of the property, plaintiffs argue that the express easements are ineffective as to those plaintiffs whose deeds do not specifically refer to the easements.

Assuming, without deciding, that plaintiffs are correct in this contention, the record establishes that defendant has, nonetheless, acquired valid flowage easements over plaintiffs' properties. The marketable record title act does not extinguish interests created by hostile possession. MCL 565.101; MSA 26.1271. Prescriptive easements fall within this category. A prescriptive easement is founded on the supposition of a grant. It arises from an open, notorious, continuous, and adverse use across the land of another for a period of 15 years. *Outhwaite v Foote,* 240 Mich 327, 331; 215 NW 331 (1927); *Reed v Soltys,* 106 Mich App 341, 346; 308 NW2d 201 (1981). A use of land is adverse when made under a claim of right where no right exists. Thus, if a claimant has obtained a conveyance of an easement which is ineffective, his use of the subservient estate, made on the assumption that the conveyance was legally effective, is adverse and not made in subordination to the owner of the burdened estate. 3 Powell, Real Property, § 413, pp 34-109—34-110.

We find that even if the marketable record title act extinguished the express easements acquired

by defendant's predecessor in interest, defendant would still have a right to flow waters over plaintiffs' properties because defendant would have acquired prescriptive flowage easements over the properties.

Defendant acquired all prescriptive rights appurtenant to the dam from Consumers. Consumers operated the dam from the time it acquired the facility in 1927 until the time it opened the dam gates in 1970. This operation and resultant flooding of what are now plaintiffs' properties constituted an open, notorious, and continuous use of the properties for a period in excess of the requisite 15 years. Furthermore, if the express easements were extinguished by the marketable record title act, under the guidelines set forth above, the use of the properties was also adverse.

In addition, any prescriptive flowage easements acquired by defendant would not have been abandoned. To prove abandonment, plaintiffs would have to show continuous nonuse of the easements for 15 years. *McDonald v Sargent,* 308 Mich 341; 13 NW2d 843 (1944). There is no evidence of nonuse for 15 years. Rather, Consumers continued to operate the dam gates and impound water to the top of the spillway until 1970.

We must also reject plaintiffs' argument that previous circuit court decrees limit the exercise of any easement that may have survived the marketable record title act. The 1922 circuit court decree did not alter the 1915 circuit court decision which allowed the defendant's predecessor to impound the water up to 20.59 feet above the river's tailwaters. Therefore, both decrees confirmed defendant's predecessor's right to maintain an 18-foot-high dam and to impound water to a point above the spillway. Accordingly, the trial judge was not in

error in concluding that the defendant is entitled to operate the dam to its full impoundment level.

We also find plaintiffs' equitable estoppel argument to be unconvincing. Plaintiffs argue that they reasonably relied upon their 40-year chains of title showing no easements and the fact that the dam was not being used to generate electricity but had its gates open when the plaintiffs bought their properties in concluding that the dam would not affect their properties. Furthermore, plaintiffs contend that Consumers failed to advise plaintiffs of the easements or to update the county records to show the easements and thereby induced plaintiffs to buy the properties. Under these circumstances, plaintiffs argue, defendant, as Consumers' successor, is estopped from using the easements and harming plaintiffs' properties.

An estoppel arises where: (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts, *e.g., Wynn v Farmers Ins Group,* 98 Mich App 93; 296 NW2d 197 (1980). We find no intentional or negligent action on the part of Consumers which induced plaintiffs into believing that no one had the right to flood their properties. Consumers was under no duty to update the county records or to inform the owners that they or a successor might someday exercise their recorded flowage easements.

In addition, there is no evidence that Consumers made any representations to anyone to the effect that the dam would never be operated. Thus, the trial judge did not err in refusing to find that defendant was estopped from operating the dam.

Finally, the trial judge did not err in dismissing plaintiffs' claim based on the Michigan Environmental Protection Act. The trial judge found that, based on the testimony, the dam's operation was not likely to pollute, impair, or destroy the environment. We agree. The testimony presented indicated that if the dam were to operate again, certain plant life would be destroyed and certain animals displaced. There was no evidence that the plant life was unique or that the displaced animals would not have a suitable environment if the dam were operated. We find that the defendant's operation of the dam does not rise to the level of impairment or destruction of natural resources so as to constitute an environmental risk and justify judicial intervention. *Committee for Sensible Land Use v Garfield Twp,* 124 Mich App 559, 563; 335 NW2d 216 (1983). We disagree that the trial court did not make sufficient findings of fact on this issue. See *Ray v Mason County Drain Comm'r,* 393 Mich 294; 224 NW2d 883 (1975). The trial court found that plaintiffs had failed to make out a prima facie case that defendant's conduct did, or is likely to, pollute, impair, or destroy the environment. This finding relieved the trial court of the need to make further findings. Thus, contrary to plaintiffs' arguments, a remand for specific findings on whether defendant rebutted plaintiffs' prima facie case is not required.

Affirmed.