AMERISURE INSURANCE COMPANY v GRAFF CHEVROLET, INC.

Docket No. 238478. Submitted June 4, 2003, at Lansing. Decided July 22, 2003, at 9:00 A.M.

Amerisure Insurance Company brought an action in the Bay Circuit Court against Graff Chevrolet, Inc., and Chrysler Corporation, seeking a declaratory judgment on whether the plaintiff or Chrysler was responsible for providing insurance coverage with respect to an automobile accident involving a car owned by Graff, Chrysler's insured, but rented by an individual who permitted her fiancé to use the car to deliver pizzas for his employer, the plaintiff's insured. The rental agreement excluded insurance coverage where the rental car was used "to carry . . . property for consideration . . . ." The defendants admitted that the fiancé, Richard Threehouse, was a permissive user of the car, but moved for summary disposition on the basis of respondeat superior because the accident occurred as a result of Threehouse's negligence during the course of his employment. The defendants further argued that Threehouse's permissive user status immediately ceased when he used the car to deliver pizzas. The plaintiff argued that the rental agreement did not forbid Threehouse from using the car to deliver pizzas, and that the exclusionary clause only applied to the renter of the vehicle. The circuit court, William J. Caprathe, J., granted summary disposition in favor of the defendants, concluding that the rental agreement prohibited use of the car for delivery purposes, and that Threehouse's violation of the agreement was an absolute defense against the claims filed by the plaintiff. On rehearing, the court further concluded that the defendants were not required to raise the nonpermissive use issue as an affirmative defense, and a subsequent order was issued ordering the plaintiff to pay Chrysler interest on the judgment from the date of the final hearing in the matter. The plaintiff appealed, and defendants cross-appealed regarding the award of interest.

The Court of Appeals held:

1. The defendants' argument, that Threehouse was not a permissive user of the car at the time of the accident because it occurred while he was delivering pizzas in violation the rental agreement's clause prohibiting use of the car to carry property for considera-

tion, was not an affirmative defense that needed to be raised in the defendants' first responsive pleading. This argument essentially denies that the plaintiff could prove a prima facie case, and does not fall within the description of affirmative defenses contained in MCR 2.111(F)(3). Moreover, the defendants were not equitably estopped from raising this argument, even where it had been previously admitted in the underlying litigation that Threehouse had been a permissive user of the car, because it did not mislead or prejudice the plaintiff.

2. The rental agreement's phrase excluding coverage where the car is used to carry passengers or property for consideration was not ambiguous. Although a permissive user of the car under the rental agreement, Threehouse's use of the car to deliver pizzas, which he did as part of his employment in order to be paid, or, in other words, to receive consideration, triggered the exclusionary provision of the rental agreement, and relieved the defendants of any obligation to provide liability coverage.

3. The trial court did not err in granting Chrysler's oral motion to amend its pleadings to file a counterclaim against the plaintiff. Delay alone is generally insufficient to warrant a denial of a motion to amend, and the plaintiff failed to present any evidence of prejudice. The plaintiff argued that discovery was closed, but failed to indicate what further relevant discovery would have been required. The plaintiff's claim that the counterclaim asserted a new theory of recovery based on the existing set of facts failed because the counterclaim essentially made the argument that the plaintiff was solely responsible for payment of the settlement and that plaintiff had been aware of that dispute since before the settlement was paid in the underlying litigation. Regarding the new theory of nonpermissive use, the trial court gave the plaintiff ample opportunity to address this issue on rehearing. There was no prejudice to the plaintiff.

4. MCL 600.6013 provides that in the case of both a judgment on a written instrument and a money judgment, prejudgment interest is paid from the date of filing the complaint. The term "complaint" as used in § 6013 means the complaint that initiates the action between the two parties. The trial court erred in concluding that because the defendant did not file a countercomplaint against the plaintiff in response to the original complaint, interest did not begin to accrue until the date the court denied the plaintiff's motion for rehearing. Thus, the trial court's award of prejudgment interest must be reversed.

Affirmed in part, reversed in part, an remanded for further proceedings consistent with this opinion.

*Richards, Tobis & Lewsley* (by *Lori L. Tobis*) for the plaintiff.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Ronald S. Lederman*), for the defendants.

Before: Fitzgerald, P.J., and Hoekstra and O'Connell, JJ.

Per Curiam. Plaintiff Amerisure Insurance Company appeals by right the circuit court's order granting summary disposition to defendants Graff Chevrolet, Inc. (Graff), and Chrysler Corporation. This case involves a dispute between two insurance companies arising from an automobile accident. The vehicle involved in the accident was owned by Graff. However, the vehicle was driven by an employee of plaintiff's insured, a Hungry Howie's Pizza store. We affirm in part and reverse in part.

I

While her car was being repaired, Debra Rahn rented a Chevrolet Corsica from Graff. The substitute vehicle agreement (also known as a rental car contract) listed Richard Threehouse, Rahn's fiancé, as a permissive user of the car. However, the contract stated that insurance coverage was excluded when the rental car was used "to carry . . . property for consideration . . . ." On January 30, 1994, while he was driving the Corsica and delivering pizzas for his employer, Hungry Howie's Pizza, Threehouse collided with another car. The other driver sued Graff, Threehouse, and Hungry Howie's. Ultimately, the claim was settled for $180,000. Because plaintiff and

defendant Chrysler Corporation[1]—Hungry Howie's and Graff's insurers respectively—could not agree regarding who was responsible for coverage, each contributed $90,000 to the settlement and agreed to determine coverage in a subsequent proceeding.

In 1999, plaintiff filed a complaint for a declaratory judgment that Chrysler was responsible for payment of the entire settlement. Responding to plaintiff's complaint, defendants[2] admitted, in part, that Threehouse was a permissive user of the car at the time the accident occurred. Defendants claimed as their sole affirmative defense that plaintiff's claims were barred by the statute of limitations. Defendants moved for summary disposition, arguing that because Threehouse negligently caused the accident while employed as a Hungry Howie's pizza delivery person, Hungry Howie's and plaintiff were responsible for Threehouse's negligence according to the doctrine of respondeat superior.[3]

Defendants argued in their response brief that because the rental agreement only granted permissive

---

[1] Specifically, Graff's insurance carrier is Chrysler Insurance Company. However, Chrysler Insurance Company is represented in this action by defendant Chrysler Corporation.

[2] In the court below, plaintiff stipulated the dismissal of defendant Auto Club Insurance Association with prejudice.

[3] Plaintiff also moved for summary disposition, claiming that both Chrysler's and plaintiff's insurance policies contained an "other insurance" clause that provided that in the case of multiple insurers, each policy would be the primary insurer with respect to an "owned" vehicle, but that with regard to a nonowned vehicle, the policy would provide only excess coverage. Plaintiff asserted that because Graff owned the subject vehicle, *its* insurer—Chrysler—was the primary insurer; thus, because Hungry Howie's did not own the vehicle, its insurer—plaintiff—was liable only for any excess judgment that was not covered by Graff's policy with Chrysler. However, for reasons we will explain below, there is no excess judgment in the present case.

user status while the driver complied with the terms of the lease agreement, when Threehouse violated the agreement by using the car to deliver pizzas, his status as a permissive user immediately ceased. Thus, plaintiff was solely responsible for providing coverage for its insured, Hungry Howie's. At the hearing on the motion for summary disposition, plaintiff countered, in part, that nothing in the lease agreement forbade Threehouse from using the car to deliver pizzas. Plaintiff further stated that the exclusionary language relied on by defendants in the rental agreement only applied to Rahn, not to Threehouse.

In March 2001, the circuit court ruled that the language of the rental agreement made clear that the car was not to be used for delivery purposes. Consequently, the court ruled that Threehouse's violation of the agreement was an absolute defense against any claim filed against either defendant. Summary disposition was granted to defendants for the $90,000 they contributed to the settlement. On rehearing, the court further concluded that defendants were not required to raise the nonpermissive use issue as an affirmative defense in their first responsive pleading, as plaintiff alleged. On November 16, 2001, the court also ordered plaintiff to pay Chrysler interest on the judgment from the final hearing on November 15.[4] Plaintiff appealed, and defendants cross-appealed concerning the award of interest.

---

[4] Defendants filed a countercomplaint on November 26 specifically requesting reimbursement, because the circuit court ruled at the November 15 hearing that defendants could do so.

II

The first issue is whether Chrysler and Graff are precluded from arguing on appeal that Threehouse was a nonpermissive user of the rental car at the time of the accident because Chrysler and Graff did not raise this issue in their first responsive pleading. We agree with the circuit court that Chrysler's and Graff's argument was properly raised.

This Court reviews de novo a decision on a summary disposition motion. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). MCR 2.111(F) provides, in relevant part:

> (3) Affirmative Defenses. Affirmative defenses must be stated in a party's responsive pleading . . . . Under a separate and distinct heading, a party must state the facts constituting
>
> \*     \*     \*
>
> (b) a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part;
> (c) a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.

This Court explained in *Stanke v State Farm Mut Automobile Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993), that an affirmative defense is "a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." (Citation omitted.)

In *Stanke, supra* at 312-313, this Court held that the issue whether an alleged insured party was operating

an "owned" vehicle at the time of an accident was not an affirmative defense. This Court stated that the effect of this claim was to deny that the plaintiff could prove his prima facie case. See *id.* at 315. The instant case presents a situation very similar to *Stanke*: Defendants claimed that there was no genuine issue of material fact concerning whether Threehouse was operating the rental car in a manner prohibited by the rental agreement at the time of the accident. Thus, this argument was not subject to the requirement of MCR 2.111(F)(3) that the defense be specifically raised in the first responsive pleading.

Plaintiff also claims that defendants were equitably estopped from claiming that Threehouse's use of the rental car to deliver pizzas was a nonpermissive use because defendants previously admitted that Threehouse was a permissive user of the car at the time of the accident. This Court set forth the elements of equitable estoppel in *Cook v Grand River Hydroelectric Power Co, Inc*, 131 Mich App 821, 828; 346 NW2d 881 (1984):

> An estoppel arises where: (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts.

Graff's admissions that Threehouse was a permissive user—even if attributable to Chrysler because Chrysler defended Graff—did not mislead or prejudice plaintiff. See *id.* Plaintiff, Graff, and Chrysler settled the underlying personal injury claim because defendants agreed that liability existed, but disputed between themselves who was responsible

for providing coverage. The insured parties were Hungry Howie's and Graff, and neither was prejudiced by Graff's admissions that Threehouse was a permissive user because they agreed to settle the underlying lawsuit and allow their insurance carriers to resolve the coverage dispute between themselves in a declaratory judgment action. Therefore, defendants are not equitably estopped from raising the nonpermissive use defense.[5]

III.

The second issue is whether the phrase in the rental agreement, "to carry passengers or property for consideration express or implied," is ambiguous. We hold that it is not.

Plaintiff maintains that the contract must be interpreted against defendants and that a reasonable interpretation does not support its application to Threehouse's act of using the car to deliver pizzas. The rental agreement Rahn executed listed her fiancé, Threehouse, as a person who could be permitted by Rahn to drive the car; that is, he was a permissive user according to the contract.[6] The agreement con-

---

[5] Moreover, as the circuit court ruled, Graff's admission that Threehouse was a permissive *user* was not inconsistent with defendants' subsequent claim that coverage was excluded because Threehouse's commercial *use* of the rental vehicle was forbidden by the rental agreement. As we explain more fully below, the rental agreement forbade customers (the renter or a permissive user) from "carry[ing] passengers or property for a consideration . . . ." Threehouse's commercial use of the vehicle to deliver pizzas violated this provision of the agreement and precluded coverage by defendants.

[6] The rental agreement commenced with the following statement:

In consideration and upon covenants, terms and conditions herein contained, the permissive user as a service customer, hereinafter referred to as "the Customer", rents a temporary substitute

tained a page of terms and conditions, including the following restriction:

> 5. The Customer agrees that said Automobile shall not be used or operated:
>
>     *     *     *
>
> i. To carry passengers or property for a consideration, express or implied.

Paragraph 12 of the agreement further provided:

> 12. If there is any violation of any of the terms, conditions, covenants or restrictions of this agreement by the Customer *or by any other driver to whom the Customer has granted permission to operate the Automobile,* the rights of the Customer and such other driver to use or operate the Automobile shall terminate immediately, and *such violations shall constitute an absolute defense against any claim filed against the Owner or its insurance carrier,* and *the Customer and such other driver, hereby agree,* jointly and severally, *to indemnify and save harmless the Owner and its insurance carrier* of and from any and all damages, loss, cost and expense that the Owner or its insurance carrier, or both, shall sustain including but not limited to, court costs and counsel fees by reason of any claim for personal injury or property damage. [Emphasis added.]

The rental agreement was a contract between Rahn and Graff, but because it provided insurance coverage, implicating Chrysler's insurance coverage, it was also, in a way, an insurance contract. See, e.g., *State Farm Mut Automobile Ins Co v Enterprise Leasing Co,* 452 Mich 25, 36; 549 NW2d 345 (1996) (example

---

automobile that is described in this agreement, hereinafter referred to as "the Automobile", from the owner of the automobile, hereinafter referred to as "the Owner."

of an automobile rental contract providing automobile insurance coverage only for permissive uses).[7] Concerning the interpretation of insurance contracts—but equally applicable to all contracts—our Supreme Court, in *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566-567; 489 NW2d 431 (1992), stated:

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Eghotz v Creech*, 365 Mich 527, 530; 113 NW2d 815 (1962). Accordingly, the court must look at the contract as a whole and give meaning to all terms. *Fresard v Michigan Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982). Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 361-362; 314 NW2d 440 (1982). This Court cannot create ambiguity where none exists. *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co*, 375 Mich 598, 602; 134 NW2d 746 (1965).
>
> . . . [C]overage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. *Fresard, supra* at 695. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume. *Kaczmarck v La Perriere*, 337 Mich 500, 506; 60 NW2d 327 (1953).

Threehouse, the permissive user of the car, was involved in an accident while using the car in the

---

[7] According to the no-fault automobile insurance act, rental car contracts may not completely disclaim insurance coverage for a rental vehicle. See *Enterprise Leasing Co, supra* at 35-36, cited in *Ryder Truck Rental, Inc v Auto-Owners Ins Co, Inc*, 235 Mich App 411, 414; 597 NW2d 560 (1999). The opinion in *Ryder Truck Rental, supra*, stated that *limiting* insurance coverage was permissible and distinct from the prohibition on completely *excluding* coverage of a rental car.

course of his employment as a pizza delivery person. The circuit court determined that Threehouse's use of the car to deliver pizzas violated the condition of the rental agreement forbidding "carry[ing] people or property for a consideration, express or implied." After a survey of relevant out-of-state cases, we hold that the better view is that the exclusion precludes coverage in this case.[8]

Plaintiff does not contest that Threehouse used the car to carry property—the pizzas—but contends that because he was paid a wage for whatever work he did and did not receive a special wage or mileage reimbursement for carrying pizzas, he did not carry property for consideration. We disagree. See *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002), citing *Michigan Nat'l Bank v Laskowski*, 228 Mich App 710, 714; 580 NW2d 8 (1998) (this Court interprets a contract according to the plain meaning of its terms).

This Court has stated that the term "consideration" has an "ordinary meaning[] [that is] readily and easily

---

[8] 57 ALR5th 591, § 2, p 603, summarizes the states' differing approaches to this issue:

In cases where the facts involve the carrying of property, courts have often considered whether the consideration paid for such transport was an hourly wage or a per-delivery charge. In a number of cases the courts have decided that since the clause was ambiguous as to whether an hourly wage was intended to be covered by the term "fee" or "charge" or "consideration," as used in the clause, then the ambiguity would be resolved in favor of the insured. Other courts have enforced the clause in cases where the property was being transported by an employee receiving an hourly wage, because the courts reasoned that the insurer had not bargained for the risk associated with such a commercial use of a vehicle when writing an automobile policy for personal liability. [Citations omitted.]

understandable to people of ordinary intelligence." *People v Cooper*, 166 Mich App 638, 652; 421 NW2d 177 (1987). In *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 238-239; 644 NW2d 734 (2002), our Supreme Court held:

> To have consideration there must be a bargained-for exchange. *Higgins v Monroe Evening News*, 404 Mich 1, 20-21; 272 NW2d 537 (1978). There must be " 'a benefit on one side, or a detriment suffered, or a service done on the other.' " *Plastray Corp v Cole*, 324 Mich 433, 440; 37 NW2d 162 (1949). Courts do not generally inquire into the sufficiency of consideration[.] *Harris v Bond & Mtg Corp*, 329 Mich 136, 145; 45 NW2d 5 (1950). It has been said "[a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Whitney v Stearns*, 16 Me 394 (1839).

Threehouse was employed by Hungry Howie's to make and deliver pizzas. He was paid the minimum wage and was not reimbursed for his mileage, although he did receive tips. In our view, because Threehouse was hired for the purpose of delivering pizzas, his transportation of those pizzas was for consideration. When he borrowed his fiancée's car, he did so with the intent to use the car to deliver pizzas so that he could fulfill the conditions of his employment and receive payment in return—if he refused to deliver the pizzas, he would not be paid. He did not simply intend to use the car to drive to work and back.

Moreover, the provision at issue is an appropriate contract exclusion. Graff was renting out a car to Rahn, presumably as a temporary replacement for Rahn's private car. It is reasonable to conclude that a commercial vehicle would command a higher insur-

ance premium because it would likely accumulate more mileage and be used in circumstances more likely to result in accidents. See, e.g., *Johnson v Allstate Ins Co*, 505 So 2d 362, 367 (Ala, 1967); *Cartos v Hartford Accident & Indemnity Co*, 160 Va 505, 516-517; 169 SE 594 (1933); *Orcutt v Erie Indemnity Co*, 114 Pa Super 493, 496; 174 A 625 (1934).

We conclude that the circuit court correctly ruled that Threehouse's use of the rental car to deliver pizzas triggered the exclusionary provision of the rental agreement, and, because of the exclusion, defendants were relieved of their obligation to provide liability coverage.[9]

---

[9] Plaintiff also raises three related claims. First, plaintiff argues that the provisions of the substitute vehicle agreement violate Michigan compulsory laws—the requirement that a vehicle owner insure the vehicle. See MCL 257.520(b)(2) (the financial responsibility act, which mandates insurance coverage for permitted drivers of rental cars), and MCL 257.401(3) (the owner's liability statute, which provides similar coverage for an "authorized" driver or an immediate family member). Because the rental car agreement only disclaimed liability for a specified nonpermissive *use* and not for all permissive *users*, the agreement was lawful. See, e.g., *Enterprise Leasing Co, supra*.

Second, plaintiff now claims on appeal that Threehouse was not a "customer" under the terms of the rental agreement. It does not appear that plaintiff argued this issue below, and this argument is not included in plaintiff's statement of the questions presented. Therefore, it has been waived. *McGoldrick v Holiday Amusements, Inc*, 242 Mich App 286, 298; 618 NW2d 98 (2000), citing *City of Lansing v Hartsuff*, 213 Mich App 338, 351; 539 NW2d 781 (1995), and *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995).

Third, plaintiff contends that the policy of insurance issued by Chrysler provides primary coverage for the accident. Because we hold that the circuit court correctly ruled that Threehouse's violation of the exclusionary clause in the rental agreement rendered the agreement void and relieved Chrysler of its duty to provide coverage, it was plaintiff's duty to provide primary coverage for Hungry Howie's employees. See, e.g., *Enterprise Leasing Co, supra*. As a consequence of the fact that Chrysler's policy exceeded the settlement amount, there is no excess judgment amount and Chrysler is responsible for the entire settlement.

IV

Third, we must decide whether the circuit court erred in granting Chrysler's oral motion to file a counterclaim against plaintiff. We hold that the circuit court did not err.

This Court reviews for an abuse of discretion the circuit court's decision to permit a party to amend its pleadings. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). MCR 2.118(A)(2) provides that a party may amend its pleadings with leave of the court and that leave should be freely given "when justice so requires." In *Weymers, supra* at 658-660, our Supreme Court stated:

> A motion to amend ordinarily should be granted, and should be denied only for the following particularized reasons:
>
> "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility . . . ." [*Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973).] . . . .
>
> Delay, alone, does not warrant denial of a motion to amend. *Fyke, supra* at 663-664. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result. *Id.* "Prejudice" in this context does not mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits. *Id.* at 657. Rather, "prejudice" exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost. *Id.* at 663. . . . We hold that a trial court may find prejudice when the moving party seeks to add a new claim

or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. . . .

Plaintiff argues that the tardy filing of defendants' countercomplaint should have been prohibited because of undue delay and prejudice. However, delay alone is generally not sufficient to warrant denial of a motion to amend, *Weymers, supra* at 659, and plaintiff has failed to present any evidence of prejudice. Plaintiff argues that discovery was closed, but fails to indicate what further relevant discovery would have been required. Plaintiff claims that the counterclaim advanced a new theory of recovery based on the existing set of facts. However, the counterclaim essentially made the argument that plaintiff was solely responsible for payment of the settlement of the underlying lawsuit and that plaintiff had been aware of that dispute since before the settlement was paid by equal contributions from the disputing insurance companies. With regard to the actual "new" theory of nonpermissive use, the circuit court gave plaintiff ample opportunity to contest that theory on rehearing. Consequently, plaintiff fails to demonstrate that the circuit court abused its discretion by permitting defendants to amend their pleadings by filing a countercomplaint.

V

Finally, Graff and Chrysler cross-appeal, raising the following issue: Whether the circuit court erroneously limited Chrysler's recovery of interest under MCL 600.6013.

Chrysler contends that it is entitled to interest on its payment of $90,000 in settlement of the underlying lawsuit from the date that it paid that sum. Chrysler maintains that prejudgment interest in indemnification cases is awarded from the date the payment is made, rather than the date the complaint is filed. The circuit court disagreed and ruled that the statute provides that interest is calculated from the date the complaint is filed, and, because Chrysler did not file a countercomplaint in response to plaintiff's complaint, interest did not accrue until the date the circuit court denied plaintiff's motion for rehearing.

This Court reviews de novo a circuit court's award of interest pursuant to MCL 600.6013. *Beach v State Farm Mut Automobile Ins Co*, 216 Mich App 612, 623-624; 550 NW2d 580 (1996). Both parties agree that the statutory basis for the payment of prejudgment interest is § 6013, which at the time of the hearing provided, in relevant part:

> (1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section. . . .

> \*          \*          \*

> (5) For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment . . . .
> (6) Except as otherwise provided in subsection (5) and subject to subsection (11), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated . . . from the date of filing the complaint . . . .

This statute provides that in the case of both a judgment on a written instrument and a money judg-

ment, interest is paid from the date of filing the complaint. See also *Prestige Cas Co v Michigan Mut Ins Co*, 969 F Supp 1029, 1032 (ED Mich, 1997). Thus, we hold that the statutory reference to "the complaint" means the complaint that initiates the legal action between the two parties—in this case, plaintiff's complaint for declaratory judgment. See *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) ("If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written.") (Citation omitted.) Therefore, the circuit court's decision on this issue is reversed. In all other respects, we affirm the court's decision.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.